STATE OF IOWA, Appellee, v. ERNEST MORRISON, Appellant.

No. 39229.

JUNE 24, 1929.

*John Fletcher*, Attorney-general, and *Neill Garrett*, Assistant Attorney-general, for appellee.

*T. P. Bence* and *C. H. Elgin*, for appellant.

EVANS, J.—The indictment is lengthy. There was a demurrer thereto, which was overruled. We reach the conclusion that the indictment was fatally defective, and that the demurrer should have been sustained. Before we proceed to an analysis of the indictment, a brief statement of the events involved in the cause wherein the perjury was alleged to have been committed, will be helpful. Such cause was entitled State v. Lester Smith, wherein that defendant was accused of larceny of chickens of Fidlar. The alleged larceny was committed on May 13, 1926. That defendant is referred to in this record indiscriminately both as Lester Smith and as Pete Smith. His trial occurred in February, 1927. The defendant herein was called by the State as a witness therein. His testimony was disappointing to the State, and was contradictory to a written statement which he had previously made to the prosecuting officers. This charge of perjury is predicated upon his testimony given at that trial.

This defendant and Smith were near neighbors. In the investigation of the larceny of Fidlar's chickens by the prosecuting officials, it was their theory that Smith committed the offense, and that he visited the same premises on the night of June 2d, although no chickens were stolen on that night. It was also

their theory that this defendant (Morrison) took him to the near vicinity of the Fidlar place on the night of June 2d, and they sought a confession from this defendant to that effect. He was a young man 20 years of age, without education beyond the third grade in school. The sheriff proceeded to arrest him, without warrant or accusation of any kind, and confined him in the county jail. This was on June 8th. The sheriff demanded a confession from Morrison in accord with his view of the facts. The defendant purported to give a full account of his whereabouts on the night of June 2d. He denied that he had been with Smith on that night, or that his automobile had been used in Smith's service, so far as he knew. This story was wholly unsatisfactory to the sheriff, and he refused to release the defendant until he should "come across." The record discloses oppressive conduct on the part of the sheriff towards the defendant in the ensuing three days. The sheriff, the deputy sheriff, and a state agent visited him two or three times each day, demanding a retraction of the story told by him, and a statement that he had been with Smith at "Patterson's Corner" on the night of June 2d. He was notified that he would not be released until he had made the statement. On the third day of his incarceration, he yielded, and signed the statement,—protesting, as he claims, that it was not true. Such written statement contained the following:

"I worked on the farm on June 2nd, 1926, all day. I had supper at home, and I then changed my clothes and took my car and drove to Bunch, Iowa. Two or three days prior to this, I had met Lester Smith in Bunch, Iowa, and we had a conversation. He asked me at that time to take my car and go with him down to Fidlar's, *where he had gotten some chickens before, and get some more chickens.*"

The materiality of the statement thus made by him, so far as it bore upon the prosecution of Smith for the larceny of May 13th, was the alleged admission of Smith above indicated in italics. Some months later, he was subpœnaed before the grand jury, which was investigating the Fidlar larceny, where he repudiated his statement and reasserted his former story. After some expostulation by the county attorney, he again submitted and renewed his statement, by another writing signed by him in

the presence of the grand jury. Smith was indicted, and his trial followed. At the trial, this defendant was called by the State as a witness, and again repudiated the statement, and testified in accordance with his original story.

The foregoing statement will aid to an understanding of the purport of the indictment. Its charging part was as follows:

"And the said Ernest Morrison, being so duly sworn, as aforesaid, then and there, on his oath, falsely, willfully, corruptly, and feloniously did depose and swear, in substance, and to effect following: 'I did not drive to Floris, on the night of June 2nd, 1926, and drive south of Floris, on the night of June 2nd, 1926. My car was not parked down south of the town of Floris, on what is sometimes called the Patterson corner. On the night of June 2nd, 1926, I did not go over to Bunch and meet Lester Smith, in front of Everett Whistler's store. That Lester Smith did not ask me [Morrison] to take him over to Fidlar's that night. I did not talk to Smith that night. *I did not say* in Mc-Cash's office I had met Lester Smith at Bunch, Iowa, and we had a conversation in which he asked me, at that time, to take my car and go with him down to Fidlar's, where he had gotten some chickens before, and get some more chickens. I didn't drive around Wheeler's Ridge and down to Floris with "Pete" Smith. On the night of June 2nd I didn't drive with "Pete" Smith to a place known as Patterson's corner, south of Floris. I never went to Floris with Smith.'

"Whereas, in truth and in fact, the said Ernest Morrison did drive to Floris on the night of June 2nd, 1926, and drive south of Floris. The said Ernest Morrison, on the night of June 2nd, parked his car south of the town of Floris, near the Patterson corner. The said Ernest Morrison, on the night of June 2nd, 1926, did go over to Bunch and met Lester Smith in front of Everett Whistler's store. Said Ernest Morrison *did say in Mc-Cash's office* that he met Lester Smith at Bunch, Iowa, and had a conversation with him, in which he asked at that time to take the car and go down to Fidlar's, *where he had gotten some chickens before, and get some more chickens.* After he had been to Unionville on the night of June 2nd, and after he had come through Bunch, he drove out to 'Pete' Smith's. He did drive around Wheeler's Ridge and down to Floris with 'Pete' Smith,

and parked his car near a place known as Patterson's, as the said Ernest Morrison then and there well knew, which said matter so sworn to before the district court was material matter in the trial then going on before the district court, in reference to the charge of 'larceny of domestic fowls' by the said Lester Smith, then and there being heard by said district court.''

The demurrer is lengthy, and we need not set it out verbatim. It challenged the materiality of the alleged false testimony. It challenged the same also on the ground that it failed to traverse the alleged false testimony, as charged.

It will be noted that the date concerning which the defendant testified was June 2d; whereas the offense upon trial was alleged to have been committed by Smith on May 13th previous. The actions of Smith and of this defendant on June 2d, as recited in the indictment, could not be deemed material, unless they could in some manner be connected with the larceny of May 13th. The one point of supposed connection between the events of June 2d and the larceny of May 13th is the supposed admission of Smith to this defendant that he had got chickens before this time at Fidlar's place. The argument for the prosecution is predicated upon the theory that Smith had in fact made such admission to this defendant, and that this defendant, as a witness at the trial, had falsely denied that such admission had been made. But the indictment fails to so charge. In traversing the alleged false testimony of this defendant, and in setting forth the truth which this defendant falsely denied, the indictment does not charge that Smith had ever said to this defendant that ''he had gotten some chickens before at Fidlar's;'' nor does it appear from the indictment that this defendant denied that Smith had so told him. The alleged false testimony recited in the indictment at this point is:

''*I did not say* in McCash's office I had met Lester Smith, at Bunch, Iowa, and we had a conversation, in which he asked me, at that time, to take my car and go with him down to Fidlar's, where he had gotten some chickens, before, and get some more chickens.''

The traverse of the indictment at this point is:

''Said Ernest Morrison *did say in McCash's office* that he

met Lester Smith at Bunch, Iowa, and had a conversation with him, in which he asked at that time to take the car and go down to Fidlar's, *where he had gotten some chickens before, and get some more chickens.*"

In the trial of Smith for the larceny of May 13th, it was entirely immaterial what this defendant had said in McCash's office. The material question was, Did Smith make the alleged admission to this defendant, and did this defendant deny that Smith had made such admission to him? Neither of these averments is contained in the indictment. The indictment does charge that this defendant testified: "I did not talk to Smith that night." This might be deemed a denial of any admission made to him by Smith. But this statement is not traversed in the indictment. Moreover, the court withdrew this particular statement from the jury, as having no support in the evidence.

Manifestly, the materiality of all the evidence recited in the indictment depends upon the supposed admission. The facts other than the admission which were testified to become material only as showing circumstances of the admission. In the absence of a charge in the indictment that such admission was in fact made, and that this defendant falsely denied it, the other alleged false testimony loses its materiality.

We think the indictment is clearly defective in this respect, and fatally so. In view of our conclusion at this point, it is quite needless that we consider other features of the record.

The judgment below is, accordingly,—*Reversed.*

ALBERT, C. J., and KINDIG, WAGNER, and GRIMM, JJ., concur.